## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UMER MALIK, an Individual,** | |
| **and** | |
| **FAIR OAKS BLVD. LLC, a**<br>**Wyoming Limited Liability Company,** | |
| **Plaintiffs,** | |
| **v.** | **Case No.** |
| **PRAIRIE RAYNOR LLC, an Illinois Limited**<br>**Liability Company, Defendant MARCIN**<br>**CHOJNACKI, an Individual, Defendant**<br>**LAURENA MIKOSZ, an Individual, Defendant**<br>**FIRST FINANCIAL INC., an Illinois**<br>**Corporation, Defendant KATHLEEN LONG, an**<br>**Individual, Defendant CHASE REAL ESTATE,**<br>**an Illinois Limited Liability Company, Defendant**<br>**MIDWEST TITLE AND CLOSING SERVICES**<br>**LLC an Illinois Limited Liability Company,**<br>**Defendant MAINSTREET PROPERTY**<br>**MANAGEMENT an Illinois Limited Liability**<br>**Company, Defendant EJ INVESTMENTS, INC.**<br>**an Illinois Corporation,  Defendant RACHEL**<br>**IRWIN, an Individual,** | **Judge:**<br><br>**Magistrate:** |
| **Defendants.** | |

## COMPLAINT

NOW COME the Plaintiffs, UMER MALIK, and FAIR OAKS BLVD. LLC, by and through their attorneys, GASPERO & GASPERO, ATTORNEYS AT LAW, P.C., and in complaining against the Defendants, PRAIRIE RAYNOR LLC, an Illinois Limited Liability Company, Defendant MARCIN CHOJNACKI, Defendant LAURENA MIKOSZ, Defendant FIRST FINANCIAL INC., an Illinois Corporation, Defendant KATHLEEN LONG, Defendant CHASE REAL ESTATE, an Illinois Limited Liability Company, Defendant MIDWEST TITLE AND CLOSING SERVICES LLC, an Illinois Limited Liability Company, Defendant MAINSTREET PROPERTY MANAGEMENT, an Illinois Limited Liability Company, Defendant EJ INVESTMENTS, INC., an Illinois Corporation, and Defendant RACHEL IRWIN, allege as follows:

## JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332(a)(2) whereas the Plaintiffs are citizens of the State of California and the State of Wyoming, and the Defendants are citizens of Illinois and Delaware. The amount in controversy, exclusive of costs, exceeds $75,000.

This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964.

## VENUE

Venue is proper in this District pursuant 18 U.S.C. § 1965 and 28 U.S. Code § 1391(c)(2), whereas multiple Defendants are residents of Illinois and the real estate at issue is located in Illinois.

Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and reside in this district.

## PARTIES

1.      Plaintiff UMER MALIK ("Malik"), an individual, is a California resident.

2.      Plaintiff FAIR OAKS BLVD. LLC ("Fair Oaks") is a Wyoming Limited Liability Company.

3.      Defendant MARCIN CHOJNACKI ("Chojnacki") is an Illinois licensed real estate broker and an Illinois resident.

4.      Defendant LAURENA MIKOSZ a/k/a LORI MIKOSZ ("Mikosz") is an Illinois licensed real estate broker and an Illinois resident.

5.      Defendant PRAIRIE RAYNOR LLC ("Prairie Raynor") is an Illinois Limited Liability company.

6.      Defendant PRAIRIE RAYNOR LLC is managed by Defendant FIRST NATIONAL FINANCIAL, INC. ("First National Financial").

7.      Defendant First National is an Illinois Corporation.

8.      Defendant KATHLEEN LONG ("Long") is the President and Secretary of Defendant First National Financial and, on information and belief, is the paramour of Chojnacki. Defendant Long is an Illinois resident.

9.      Defendant CHASE REAL ESTATE LLC ("Chase Real Estate") is an Illinois LLC.

10.     Defendant MIDWEST TITLE AND CLOSING SERVICES LLC ("Midwest Title") is an Illinois Limited Liability Company.  Midwest is managed by XYZABC, Inc., a Delaware Corporation.

11.     Defendant Midwest Title provides real estate transaction services and serves as the registered agent of Defendant Prairie Raynor and Defendant First National Financial.

12.     Defendant RACHEL IRWIN ("Irwin") is an attorney licensed to practice law in Illinois.  Rachel Irwin is employed by Midwest Title.   Irwin is also the registered agent of EJ INVESTMENT GROUP INC. and Defendant MAINSTREET PROPERTY MANAGEMENT LLC.  Irwin was also the agent appointed as Power of Attorney on behalf of seller PRAIRIE RAYNOR LLC in the subject transaction.  Irwin is also the President and Director of XYZABC, Inc., the manager of defendant Midwest Title (above).

13.     MAINSTREET PROPERTY MANAGEMENT ("Mainstreet Management") is an Illinois Limited Liability Company managed by EJ INVESTMENT GROUP INC. ("EJ Investment Group"). EJ Investment Group is a Delaware Corporation.   Defendant MARCIN CHOJNACKI is the President of EJ Investment Group.

14.     Defendants Irwin, Chojnacki, Mikosz, Mainstreet Management, and EJ Investment Group are all located at and operate out of the same office space located at 25-41 E. Main Street Suite 204, Roselle, IL 60172.

15.     CITIPOINT PROPERTIES appears to have been an un-incorporated enterprise organized by Chojnacki which held itself out as a real estate investment company for the purposes of inducing and capitalizing from out-of-state investors in connection with Illinois real estate.  On December 28, 2022 this un-incorporated enterprise organized itself as "CITYPOINT

4

ILLINOIS LLC."  The allegations set forth herein cover time periods when this enterprise was both un-incorporated and incorporated.

## FACTS COMMON TO ALL COUNTS

16.     Beginning in January 2022 and until December 29, 2022, Prairie Raynor LLC was the owner of the real estate commonly known as 2049, 2105, 2107, and 2111 W. 135th Place, Blue Island, Illinois (the "Property").

17.     Prairie Raynor is indirectly controlled by Defendant Chojnacki.

18.     In early August of 2022, Plaintiff Malik responded to a social media advertisement ("The Initial Ad") inviting the reader to contact "CitiPoint Properties" which identified itself as a source for connecting investors to undervalued and underperforming properties – carrying the promise of rapidly increasing equity and high cash flow.  This alleged connection between the target investor and the alleged owner of "off-market" properties was referred to as an offering of "directly sourced" properties used (See the Initial Ad at Exhibit 1).

19.     Malik's query prompted a response from Defendant Mikosz. The response from Mikosz evolved in a sustained text and phone interaction through which Mikosz drew Malik into the scheme giving rise to this action.

20.     Mikosz told Malik that "her company reaches out to apartment building owners to learn if they are interested in selling their properties and then introduces their properties to the investors. Primarily her investors are out-of-state buyers, mainly California."

21.     She further stated that she was affiliated with a property management company that would help the new owner as the property manager, namely Mainstreet Management.

22.     Malik was assured that if he invested, he would be purchasing a building that was underperforming due to the fact that it was owned and self-managed by a local landlord.

23.     The false promise that the property was owned and self-managed by a local, unprofessional landlord allowed Mikosz to foster the proposition that 1) the property could be acquired from the local individual at a bargain price and 2) once the property was managed properly (with the help of Mikosz's affiliate property management company, Mainstreet Management), the investor (Malik) could expect substantial cash flow.

24.     Subsequently, on September 24th, 2022, Malik traveled to Illinois to meet with Mikosz and Chojnacki. Chojnacki introduced himself as a Chase Broker (Mikosz's managing broker) and a principal of the property management company (Main Street Management).

25.     Mikosz continued to describe herself to Malik as his real estate agent and representative in the transaction.  However, Mikosz actually was an affiliate, was employed by, or was an agent of Chojnacki – who secretly owned and/or controlled the property that Mikosz would soon offer for sale to Malik.

26.     Mikosz and Chojnacki actively led Malik to believe that since they were agents of Chase Real Estate, that the transaction would be safely negotiated and consummated under the auspices of Chase Real Estate.

27.     All of Mikosz and Chojnacki's e-mail correspondence with Malik were sent through their e-mails at Chase Real Estate with the addresses lori.mikosz@mychaseagent.com and marcin.chojnacki@mychaseagent.com.

28.     At all times relevant herein, the website for CitiPoint was a virtual reflection of the website for Chase Real Estate (See printed copy of the CitiPoint website as of January 27, 2023 attached as Exhibit 2 and the Chase Real Estate Website at Exhibit 3 as of the filing hereof). Both websites were significantly revised prior to and since the attached captures. Prior to

the revisions and at the times relevant to the facts alleged herein, the websites were of the same design motif and were nearly identical to each other.

29.     Subsequent to the September meeting, on October 31, 2022, Mikosz told Malik about four buildings comprised of 24 residential apartment units in Blue Island, Illinois (the Property).   She represented that the four buildings were owned by an "old couple who is retiring" who have limited property management skills.

30.     Mikosz represented that the Property was in good condition and fully leased with renters who were current in their rent.  She provided Malik with a cash flow analysis supporting the proposition that the Property would be profitable at the purchase price of $2.1 million.

31.     In fact, contrary to her representations, Mikosz had actual knowledge that the property was not fully leased at the time these representations were made to Malik.

32.     Throughout the negotiations and transaction, Mikosz continued to identify herself as Malik's agent and representative.  She continued to represent to Malik that the counterparties on the transaction would be the long-standing owners of the building who were located by CitiPoint to connect them to investors such as Malik.

33.     In reality, the Property was owned by Prairie Raynor LLC, an entity indirectly controlled by Chojnacki for nearly eleven months.

34.     Based on Chojnacki's and Mikosz's representations, Malik entered into a contract to purchase the property on November 7th, 2022. (See contract attached as Exhibit 4).

35.     In the contract, Chase Real Estate is indicated as "Selling Office." Mikosz is indicated as "Buyer's Designated Agent." Seller is specified as OOR ("Owner of Record").

36.     Between November 7, 2022 and December 20, 2022, Plaintiff asked Defendant Mikosz to provide proof of the rents fully paid and the current payment status.

37.     Mikosz insisted to Malik that the rent was fully paid but they could not provide financial documents showing same because the sellers were an old couple who are poorly organized, not good with bookkeeping and are unable to provide these documents.

38.     Specifically, Mikosz wrote to Plaintiff: "You (sic.) paying almost $1M less of what this building is worth. Its self managed and very unorganized." See email of November 30, 2022 (fifth bullet point) attached at Exhibit 5).

39.     On December 12th, 2022, when Malik learned from his lender that the owner / seller was actually an LLC (Prairie Raynor) and not an "old couple," Malik inquired of Mikosz.

40.     Mikosz wrote Malik and advised him that the seller's attorney, Rachel Irwin, represented as follows: "From sellers attorney [Defendant Irwin] "Per seller, they were going through a org/asset restructure for tax/estate planning purposes. The transaction was done between their old and new entities and it was done off book. They did not market the property for sale at that time"" See date of email from Mikosz to Plaintiff attached at Exhibit 6.

41.     Mikosz also confirmed earlier in the same Email string (in Exhibit 6) that the seller confirmed that they owned the property for years.

42.     The statements 1) that the transfer was done by the seller for tax purposes between their old and new entities and 2) that the sellers owned the property for years, are both stark and utter falsehoods.

43.     At that time, Mikosz, Chojnacki and Irwin had actual knowledge that the property was not owned by individuals, but was owned by Prairie Raynor, and thus indirectly owned and/or controlled by Chojnacki.

44.     At that time, Mikosz, Chojnacki and Irwin had actual knowledge the property was far from fully leased and fully current in rent.  In fact the building was partially vacant, multiple tenants were in in the process of eviction, and others were severely in arrears.

45.     Mikosz, Chojnacki, and Irwin knew their occupancy representations were untrue not only because Chojnacki controlled the puppet entity that owned the property, but also because Chojnacki's management company, Main Street Property Management, was managing the property.

46.     Notwithstanding her actual knowledge to the contrary, Defendant Mikosz told Malik that instead of providing financial and tax records, the sellers, "the old couple" would provide a written statement confirming that all tenants are paying on time.

47.     On December 20, 2022, Defendant Rachel Irwin, as attorney for Prairie Raynor, emailed Malik a statement signed by Defendant Kathleen Long (later learned to be Chojnacki's paramour and roommate) and notarized by Irwin listing all units of the subject properties and identifying the payment status as current. (The "Rent Roll" is attached hereto as Exhibit 7.)

48.     Several days afterward, on or about December 26, Malik asked Mikosz to provide the information on the property manager she had been proposing to manage the property after his acquisition.  Mikosz provided Malik with the phone number of AnnMarie Siriano at Main Street Property Management LLC (Chojnacki's management company).

49.     During that phone call, AnnMarie Siriano inadvertently disclosed that the property was not fully leased; that many of the non-vacant units were in a state of severe delinquency; and several were involved in eviction proceedings.  AnnMarie Siriano stated that she was aware of these facts because Chojnacki's company was already managing the property.

9

This came as a surprise to Malik who thought that the property was owned and self-managed by the "old retiring couple."

50.     Malik called Chojnacki to inquire as to the veracity of the information provided by AnnMarie Siriano.

51.     Chojnacki used the occasion of this phone call to assure Malik that the rent roll was valid.  Chojnacki further told Malik that there must be some confusion in AnnMarie's mind because his company was not managing the property – which was a complete falsehood.

52.     Chojnacki further lied that he only aided the "Seller," (the fictitious old couple) to find tenants for a few of their units and that he did nothing else.

53.     Chojnacki did not disclose to Malik that he, Chojnacki, was the either and actual owner or had control of the property and that the property was being managed by Chojnacki's own management company.

54.     Malik attempted to call AnnMarie again but was told by AnnMarie that she was ordered by her boss (Chojnacki) not to communicate with him anymore.

55.     Malik consulted with his agent Mikosz.  Malik told Mikosz that he was unsure about this transaction and was considering canceling the deal. Mikosz strongly advocated that he remain in the deal and insisted that the Rent Roll was valid.  She further misrepresented that since the rent roll was notarized its contents had to be true.

56.     Next, she provided Malek with some news.  The "old couple seller" wanted to ameliorate Malik's misgivings by offering him a $20,000 escrow fund at closing to cover any deviations from the Rent Roll's accuracy and cover eviction costs if any.

57.     Throughout these conversations, Mikosz and Chojnacki continued to shield the fact that the seller was actually the entity controlled by Chojnacki.  Chojnacki and Mikosz

continued to shield the fact that Mikosz was actually an agent, affiliate or an employee of Chojnacki.

58.     Ultimately Malik was convinced by Mikosz and Chojnacki to remain in the deal and the closing was scheduled for December 29, 2022.

59.     Notwithstanding Chojnacki's admonitions to her to refrain from communicating with Malik, AnnMarie Siriano did communicate with Malik once more on December 29, 2022 to advise him that the buildings were not cleared for transfer by the city of Blue Island because of numerous code violations.

60.     Malik again contacted his perceived representative Mikosz about the repair problems. She represented that she had talked to the "old retiring couple seller" and that they were willing to put $30,000 into escrow to cover the repairs. She insisted that this was a very reasonable offer given her explicit insistence that the repairs, in total, amounted to less than $6,000 in work and that he should accept.

61.     Mikosz further pressured Malik with the contention that the "seller's" willingness to put $50,000 at risk should convince him that no misrepresentations as to the repairs or the tenants exist because the seller would not want to lose those funds.

62.     On December 29, 2022, the Plaintiffs and Prairie Raynor closed on the Contract, at which time the Plaintiff Fair Oaks Blvd. LLC acquired legal title to the Subject Properties. Fair Oaks Blvd LLC is owned by Malik.  The purchase price was $2.1 million.

63.     Contrary to the representations of Defendants, Defendant Prairie Raynor purchased these buildings eleven months prior to the December 29, 2022 sale.  Seller was not "an old retiring couple who had owned the buildings a long time," contrary to the representations of Defendant Mikosz.

11

64.     The purchase price Prairie Raynor LLC paid for the Property was $1,550,000.

65.     Defendant Mikosz and Chojnacki at all times held themselves out to be agents of and acting on the behalf of the Plaintiffs.

66.     At no time did Defendant Mikosz disclose any conflict of interest.

67.     At all times herein, Defendant Irwin was acting as an agent of Defendant Midwest Title and of Prairie Raynor, LLC.

68.     Midwest Title, plays a significant role in the transactions by providing registered agent services to the various puppet entities, housing various legal operations appurtenant to the entities and transactions, as well as charging the Plaintiff for some unspecified services described in the closing statement as "Closing Coordination Fee."

69.     As stated above, Defendants Irwin, Chojnacki, Mikosz, Midwest Title, Mainstreet Management, and EJ Investment Group are all located at and operate out of the same office space.

70.     Defendant Chojnacki made misrepresentations to Plaintiffs to induce them to consummate the subject transactions.

71.     Defendant Long engaged in misrepresentations to Plaintiffs to induce them to consummate the subject transaction.

72.     Defendants Chojnacki did not disclose that he had a conflict of interest in that he was an indirect owner and/or controller of Prairie Raynor.

73.     Defendants Mainstreet Management, acting through Defendant Chojnacki, and Prairie Raynor fraudulently misrepresented the condition of the properties to the Plaintiffs.

74.     The City of Blue Island had been directing building code violations at the Defendants for some months prior to the transaction.

75.     On or about February 3, 2023, Plaintiff learned that the Defendants did not comply with the Blue Island inspection and real estate transfer requirements as required by Blue Island Ordinances.

76.     Defendants' misrepresentations as to violations and failure to comply with Blue Island real estate transfer inspection and approval requirements has resulted in a suspension of the properties' municipal occupancy certifications and prevented Plaintiff from renting the Property.

77.     Defendants have attempted to induce the Plaintiff to repeat the scam with additional properties offered by the Defendants. See recent offer attached at Exhibit 8.

78.     Defendants have treated other individuals or entities in the same illegal manner alleged by the Plaintiffs.  There are four known specific additional individuals and/or entities who were similarly defrauded by precisely or nearly precisely the same pattern of artifices and fraudulent misrepresentations as set forth in this Complaint.

79.     The Defendants are, at present, continuing to lure investors into the enterprise using the same scheme and under the same guises as those set forth herein. Accordingly, the conduct alleged herein constitutes the Defendants' regular method of conducting their business.

## COUNT I:  RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO) - 18 U.S.C. 1962(c), (d)

### (Defendants Chojnacki, Mikosz, Long, Prairie Raynor, LLC, Citypoint Illinois, LLC, Mainstreet Property Management, LLC, First Financial, Inc.

Plaintiffs Umer Malik and Fair Oaks Blvd. LLC re-state and re-allege Paragraphs 1 through 79 as though fully stated herein.

### RICO Persons

80.     Defendants Chojnacki, Mikosz, Long, Prairie Raynor, LLC, Citypoint Illinois, LLC, Mainstreet Property Management, LLC, and First Financial, Inc. are each capable of holding a legal or beneficial interest in property, and therefore each is a "person" within the meaning of 18 U.S.C. § 1961(3).

### The Rico Enterprise

81.     Defendants Chojnacki, Mikosz, Long, Prairie Raynor, LLC, Citypoint Illinois, LLC, Mainstreet Property Management, LLC, and First Financial, Inc. were associated in fact, and constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce. This enterprise shall be referred to herein as the "CitiPoint Enterprise."

82.     The CitiPoint Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

83.     The primary purpose of the CitiPoint Enterprise was to lure and then fleece unsuspecting real estate investors for the financial benefit of CitiPoint.

84.     For the purpose of 18 U.S.C. § 1962(c), and during the periods relevant to this complaint, Defendants Chojnacki and Mikosz each had authority within the CitiPoint Enterprise,

and/or conducted or participated, directly or indirectly, in the conduct of the CitiPoint Enterprise's affairs through the pattern of racketeering activity described herein.

### Effect on Interstate Commerce

85. The CitiPoint Enterprise conducted its racketeering activity, in part, using the interstate mails and wire communications, including by use of the telephones, by electronic transfers of funds, and through the mailing of checks.

### Predicate Acts of Racketeering Activity

86. Through the CitiPoint Enterprise, or in conspiracy with it, the Defendants conducted, engaged in, and participated in a pattern of racketeering activity, consisting, at a minimum, of the following predicate acts: (a) multiple violations of Title 18, United State Code, Sections § 1341, 1343, and 1346 (mail fraud and wire fraud). The scheme to defraud was advanced, concealed or furthered by the use of the U.S. mail or wires.

87. Specifically, the Defendants' predicate acts include, but are not limited to, the following:

  a) In furtherance of a scheme or artifice to defraud as defined in 18 U.S.C. §§ 1341 & 1346, and with specific intent to defraud, Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in "directly sourced" real estate opportunities when they actually intended to sell the duped investor their own significantly marked-up property.

  b) Engaging in a sustained fiction with the victim, replete with misrepresentations and calculated omissions to keep the investor misled that their transactional counterpart was an "old retiring couple" selling the property directly to the investor at bargain level pricing.

  c) Fabricating occupancy records of the property to mislead the investor with the falsehood that that property was fully-leased and the tenant payments were fully current.

d)  Concealing and misrepresenting known significant building code and occupancy violations from the investor with the intent of inducing the investor to enter into the transaction.

e)  Engaging in post-closing fraudulent activity in the management of the property by 1) continued concealment of and falsification of rent records; 2) continued concealment of building occupancy and code violations.

## Pattern of Racketeering Activity

88.   The Defendants acted, and conspired to act together, and in association with others knowingly and repeatedly committed the above fraudulent acts in furtherance of and for the purpose of enriching themselves financially and to otherwise further the ends of the CitiPoint Enterprise.

89.   The predicate acts described above were related to one another as part of a common scheme or plan.

90.   Such unlawful conduct constituted a continuous pattern of racketeering activity beginning as early as January 2022, continue through the present, and are likely to continue into the foreseeable future.

## Conspiracy (18 U.S.C. § 1962(d))

## (Defendants Midwest Title and Closing Services LLC, Irwin, EJ Investments, Inc., Chase Real Estate, LLC)

91.   As described above, Defendants Midwest Title and Closing Services LLC, Irwin, EJ Investments, Inc., Chase Real Estate, LLC, did knowingly agree to facilitate the CitiPoint Enterprise Defendants, and those acting in concert with them, to violate 18 U.S.C. § 1962(c) for the purpose of achieving and profiting from the racketeering activities described above.

92.   In furtherance of that agreement, the Defendants knowingly and intentionally agreed and conspired to commit at least two of the predicate acts set forth above and they did so

16

with the knowledge and intent that such acts were in furtherance of the foregoing pattern of racketeering.

93.     Specifically, the Defendants described herein were either affiliated or controlled by the CitiPoint Enterprise Defendants

94.     The Defendants described herein knowingly provided auxiliary services with respect to the marketing, negotiation, and transaction of real estate closing services which were necessary to and facilitated the accomplishment of the goals of the CitiPoint Enterprise.

95.     Defendant Chase Real Estate LLC provided the cover of a legitimate real estate brokerage enterprise, oversaw the conduct and behavior of Mikosz and Chojnacki, and received a commission from Prairie Raynor (the seller) notwithstanding the fact that at all relevant times herein, they held themselves out as Plaintiffs' agent.

96.     Defendant Irwin is forming at least some of the layers of shell entities, providing misinformation about the real estate, acting as officers and/or principals for the enterprise's entities, and acting as their counsel in the negotiations and transactions wherein the real estate is conveyed to the investor, or in this matter, acts as counsel for the fictitious old retiring couple.

**Injuries to the Plaintiff Business and Property**

97.     As a direct and proximate cause of the described racketeering activities and violations of 18 U.S.C. § 1962(c), and the described conspiracy in violation of 18 U.S.C. § 1962(d), the Plaintiffs have been injured in their business and property. The Defendants' racketeering activities caused the Plaintiffs to invest $2.1 million in real estate which the Defendants had actual knowledge was worth far less and said racketeering activities directly resulted and were the proximate cause of the Plaintiffs' loss of invested funds.

98.     The Defendants' racketeering activities further caused the Plaintiff's substantial damages due to the fact that the Property is not certified for occupancy and thus un-rentable due to multiple severe violations of municipal occupancy and code violations that were known and hidden from the Plaintiffs. The Property is also un-rentable due to the municipality's enforcement of the restrictions on transfer provisions rendering it unlawful for a seller to transfer real property without a municipal occupancy and code inspection.

99.     These injuries were a foreseeable consequence of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), and their conspiracy in furtherance of those racketeering violations, in violation of 18 U.S.C. § 1962(d).

**WHEREFORE**, Plaintiffs respectfully request the Court to enter judgment in their favor and against each of the CitiPoint Enterprise Defendants and their conspirators and order the following relief:

(a) All damages proven pursuant to RICO, trebled as permitted by law;

(b) Punitive damages, attorney fees, and costs as permitted by law; and

(c) Such other and further relief as the Court may deem just and appropriate.

## COUNT II: COMMON LAW FRAUD

100.    Plaintiffs restate Paragraphs 1 through 99 as if fully set forth herein.

101.    Defendant Mikosz, Chojnacki and Irwin's statements set forth above concerning the Property, its condition, and its leased status were false statements of material fact.

102.    Defendants Mikosz and Chojnacki made the statements with knowledge that they were false.

103.    Defendants Mikosz and Chojnacki made the false statements with the intention to induce the Plaintiffs to purchase the Property under falsified premises.

104.    Plaintiffs reasonably and justifiably relied on the said Defendants' false statements.

105.    The Plaintiffs suffered damages due to reliance on the false statements.

106.    Accordingly, the Defendants' statements, Plaintiffs' reliance thereon, and resulting damages constitute common law fraud.

WHEREFORE, Plaintiffs, Umer Malik and Fair Oaks Blvd. LLC, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT III: BREACH OF CONTRACT –
### FALSE REPRESENTATIONS AS TO BUILDING CODE VIOLATIONS

107.    Plaintiffs re-state Paragraphs 1 through 106 above as if fully set forth herein.

108.    Paragraph 10 of the Contract between the Plaintiffs and Defendant Prairie Raynor, LLC provides the following representation: "Seller represents that Seller has not received written notice from any governmental body or owner association regarding (a) zoning, building, fire or health code violations that have not been corrected."

109.    Defendants had been in receipt of notices and had actual knowledge of multiple significant building and health code violations that had not been corrected at the time of the contract and at the time of the closing.

110.    The Contract between the parties was a valid and enforceable contract.

111.    The Plaintiffs performed all of their obligations pursuant to the terms of the Contract.

112.    The Defendants breached the contract by misleading statements and or omissions concerning the representations required by Paragraph 10 resulting in significant damages to the Plaintiffs.

WHEREFORE, Plaintiffs, Umer Malik and Fair Oaks Blvd. LLC, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT IV: BREACH OF CONTRACT – FALSIFIED RENT-ROLL

113.    Plaintiffs re-state Paragraphs 1 through 112 above as if fully set forth herein.

114.    Paragraph 11 of the Contract between the Plaintiffs and Defendant Prairie Raynor, LLC provides the following contractual obligation on the part of the Seller: "Seller is required to deliver assignments of leases and Rent Roll to Buyer at the time of closing." (Lines 163-164).

115.    The Sellers provided a document purporting to be a rent roll that was materially and knowingly falsified.

116.    Significantly, the falsified rent role provided that the property was fully leased, and all units were current in payment status when in fact there were vacant units; severely delinquent tenants, and tenants in the process of being evicted.

117.    The duty under the Contract to provide a rent roll implies that the rent roll tendered will be free from material inaccuracies and known falsehoods.

118.    The Contract between the parties was a valid and enforceable contract.

119.    The Plaintiffs performed all of their obligations pursuant to the terms of the Contract.

120.     The Defendants breached the Contract by providing a document purporting to be a rent roll that was significantly, materially and knowingly falsified.

WHEREFORE, Plaintiffs, Umer Malik and Fair Oaks Blvd. LLC, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT IV: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (CONSUMER FRAUD ACT)

121.     Plaintiffs re-state Paragraphs 1 through 120 above as if fully set forth herein.

122.     Defendants Mikosz, Chojnacki, Long and Irwin's statements, including but not limited to their statements set forth above concerning the Property, its condition, and its leased status were false statements of material fact and constituted a deceptive act or practice by the said Defendants.

123.     Defendants Mikosz, Chojnacki, Long and Irwin intended that the Plaintiffs rely on the deception.

124.     The occurrence of the deception was in the course of conduct involving trade and commerce.

125.     The deceptions were originated by residents of Illinois, concern Illinois real estate, and have resulted in violations of Illinois municipal laws.  Accordingly, the conduct alleged herein directly and indirectly affect the State of Illinois.

126.     The deception was the proximate cause of actual damage to the Plaintiffs.

127.     Accordingly, the conduct of deception perpetrated by Defendants Mikosz Chojnacki, Long and Irwin constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiffs, Umer Malik and Fair Oaks Blvd. LLC, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

### COUNT V: VIOLATION OF THE ILLINOIS REAL ESTATE LICENSE ACT

128.   Plaintiffs re-state Paragraphs 1 through 127 above as if fully set forth herein.

129.   Defendants Micosz and Chojnacki provided real estate services in this transaction as agents of Chase Real Estate LLC.

130.   Defendants Mikosz, Chojnacki and Chase Real Estate LLC were "Licensees" under the Real Estate License Act, 225 ILCS 454/1-1 *et seq.*

131.   Section 15-25 of the Real Estate License Act mandates that:

> Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information.

132.   Section 15-5 of the Real Estate License Act specifies that:

> This Article 15 may serve as a basis for private rights of action and defenses by sellers, buyers, landlords, tenants, real estate brokers, and real estate salespersons.

133.   Defendants Mikosz, Chojnacki and Chase Real Estate LLC breached the requirements of the Real Estate License Act by committing the following actions:

a)   fraudulently misrepresenting that they represented the Plaintiffs as buyer when in actuality they represented, were affiliates of and/or were direct agents of the seller;

b)   fraudulently misstating the condition of the Property;

c)   fraudulently misstating the tenancy of the Property;

d)   fraudulent falsification of the purported rent roll;

e)   fraudulently misrepresenting to the Plaintiffs that the seller in the transaction was a directly sourced, off-market seller when in truth the

Seller was comprised of, directly affiliated with or controlled by the Defendants themselves or were agents thereof;

134.     Plaintiffs relied on Defendants Mikosz, Chojnacki and Chase Real Estate LLC's statements and suffered damages therefrom.

WHEREFORE, Plaintiffs, Umer Malik and Fair Oaks Blvd. LLC, pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

**COUNT VI:  NEGLIGENT MISREPRESENTATION**

135.     Plaintiffs re-state Paragraphs 1 through 134 above as if fully set forth herein.

136.     Defendants Mikosz, Chojnacki, Long and Irwin's statements, including but not limited to their statements set forth above concerning the Property, its condition, and its leased status were false statements of material fact.

137.     Defendants Mikosz, Long, Irwin, and Chojnacki's made the false statements through carelessness or negligence in ascertaining the truth of the statement by the party making it.

138.     Defendants Mikosz, Long, Irwin, and Chojnacki's false statements were made with intention to induce the Plaintiffs to act.

139.     The Plaintiff's actions in consummating the transaction were in reliance on the false statements.

140.     Plaintiff's reliance was the proximate cause of damage to the Plaintiffs.

141.     Defendants Mikosz, Long, Irwin, and Chojnacki's statements therefore constitute Negligent Representation.

WHEREFORE, Plaintiffs, UMER MALIK and FAIR OAKS BLVD. LLC, pray that this Honorable Court enter judgment in their favor and against DEFENDANTS in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

Respectfully Submitted,

/s/Carmen Gaspero

_____

/s/Lisa Gaspero

_____

All Plaintiffs
By: Their Counsel


Gaspero & Gaspero
Attorneys at Law, P.C.
Carmen A. Gaspero
Lisa M. Gaspero
2001 Butterfield Rd., Suite 1022
Downers Grove, Illinois 60515
630-687-9700