# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UMER MALIK, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 23-cv-01182 ) ) Hon. Jeffrey T. Gilbert |
| PRAIRIE RAYNOR LLC, et al., | ) ) |
| Defendants. | ) |

## ORDER

The dispute addressed in this Order arises in the context of a large, multiparty litigation in which many Plaintiffs allege, in more than a dozen cases coordinated for discovery purposes, that various overlapping defendants and defendant groups engaged in a fraudulent real-estate investment scheme. In short, Plaintiffs allege defendants, including the defendants named in the pending motion, engaged in a fraudulent enterprise through which defendants allegedly misrepresented the conditions and ownership of real estate properties to induce Plaintiffs to purchase them. *See* Memorandum Opinion and Order [ECF No. 277] (Kendall, J.) at 1. Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), (d), as well as state law fraud and contract-based claims against various defendants. *Id.*

Now before the Court is Plaintiffs' Motion to Compel Defendants Chase Real Estate LLC, the "Chojnacki Defendants" [1], David Brandonisio, Kendall Murphy,

---

[1] Chojnacki Defendants include "Marcin Chojnacki; Robert Rixer; 11902 Longwood LLC; 1630 N 1 LLC; Citypoint Illinois LLC; Deodar, Evergreen, & Butternut EC LLC; EJ Investment Group, Inc.; Fairview Avenue Properties LLC; Grand Columbus EC LLC; Harlem Elmwood LLC; Illinois Assets LLC; Mainstreet Property Management LLC; Page Street Properties, LLC; TCF National Holdings, Inc.; and Torrance 2 LLC," Motion [ECF No. 287] at 1; *see also* Chojnacki Defendants' Response [ECF No. 291] at 1 n.1 (same list but also adding Mon Ami TCF LLC).

1

Kathleen Long, and Midwest Title and Closing Services LLC [ECF No. 287] (the "Motion") to produce tax returns from the entity Defendants identified in the Motion and emails from certain Individual Defendants. The Court addresses each of these categories in turn below.[2]

**Plaintiffs' Motion to Compel Tax Returns**

Plaintiffs seek relief as to many entities and individuals with their omnibus Motion. In some instances, Plaintiffs argue based on little more than their say-so that various parties are related so as to justify their request that more than one individual or entity produce the tax returns Plaintiffs are seeking. As to Midwest Title, for example, Plaintiffs say that Defendant entity is owned by Individual Defendants Rachel Irwin ("Irwin") and Marcin Chojnacki ("Chojnacki"), and Plaintiffs therefore seek production of Midwest Title's tax returns in the possession of these Individual Defendants as well as from Midwest Title. Motion [ECF No. 287] at 2. Irwin and Midwest Title respond that they produced tax returns for 2022 and 2023 and say for that reason the Motion is moot as to them. *See* Defendants Rachel Irwin and Midwest Title and Closing Services' Response to Plaintiffs' Motion to Compel [ECF No. 290] ("Midwest Title Response").[3] In Reply, Plaintiffs explain (at least implicitly) their

---

[2] The Court capitalizes "Defendants" in this Order when referring to Defendants against whom Plaintiffs have moved to compel. The Court uses "defendants" with a lower case "d" with reference to all named defendants in these related cases whether they are parties to the instant motion practice or not.

[3] Chojnacki Defendants, which includes Marcin Chojnacki and from whom Plaintiffs also seek production of Midwest Title's tax returns, respond that Midwest Title "does not form a part of the Chojnacki Defendants" and is represented by separate counsel (who filed the above referenced Midwest Title Response). *See* The Chojnacki Defendants' Response to Plaintiffs' Motion to Compel [ECF No. 291] ("Chojnacki Defendants' Response") at 2. Accordingly, Chojnacki Defendants assert "Plaintiffs are demanding the production of documents from the wrong parties" but they do not address whether Chojnacki is an "owner" of Midwest Title or if he has possession of Midwest Title's tax returns. *Id*. Plaintiffs say in their Reply that Chojnacki and Irwin "own" Midwest Title's sole member, which Plaintiffs say is identified in Midwest Title's previously produced tax returns as XYZABC, Inc., but Plaintiffs do not provide the Court with this evidence. [ECF No. 294] at 10-11. Nor do Plaintiffs provide legal authority addressing whether Plaintiffs can seek to compel production of XYZABC, Inc.'s tax returns from Irwin or Chojnacki based on Plaintiffs' representation as to their ownership interest in this entity. *Id.* Chojnacki Defendants, in turn, do not address Plaintiffs' arguments

2

Motion is not moot because they seek Midwest Title's tax returns for years 2021 and 2024. Plaintiffs also seek from Midwest Title, Irwin and Chojnacki tax returns for 2021 through 2024 for XYZABC, Inc., an entity Plaintiffs say is the sole member of Midwest Title. Reply in Support of Plaintiffs' Motion to Compel [ECF No. 294] ("Reply") at 9-10.[4]

In addition, Plaintiffs seek to compel production of tax returns from 2020 through 2024 for Defendant entities within the group comprising Chojnacki Defendants. Motion [ECF No. 287] at 2 (citing Document Production Request Number 6 which sought production of tax returns from defendants and their affiliates including officers, managers, shareholders, owners, and directors). Plaintiffs appear to narrow their Request in their Reply, listing only certain entities within Chojnacki Defendants' group in the request for relief (including TCF National Holdings, Inc., EJ Investment Group, Mainstreet Property Management LLC, and Deodar, Evergreen & Butternut EC LLC). Reply [ECF No. 294] at 10.[5]

Plaintiffs also seek production of tax returns for certain Defendant entities from Individual Defendants Kathleen Long, David Brandonisio and Kendall Murphy. Specifically, Plaintiffs seek production of 2020 through 2024 tax returns for TCF National Holdings, Inc. ("TCF") and First National Financial, Inc. ("First National") from Long; tax returns for 1st Midwest Financial, Inc. ("1st Midwest") from Murphy; and tax returns from BMO Property Management, Inc. ("BMO") from Brandonisio. Motion [ECF No. 287] at 2; *see also* Reply [ECF No. 294] at 10. Although First

---

about XYZABC, Inc. or Chojnacki's ownership interest in in this entity in their surreply. *See* The Chojnacki Defendants' Sur-Reply to Plaintiffs' Motion to Compel [ECF No. 315] ("Chojnacki Defendants' Surreply").

[4] Plaintiffs, in their Motion, did not identify XYZABC, Inc. as a defendant from which they are seeking to compel production of documents. [ECF No. 287] at 1.

[5] Plaintiffs also refer to an entity named EJ Commercial, Inc., in their Reply, *see* [ECF No. 294] at 10, but Plaintiffs identified a different entity, EJ Investment Group, Inc., as one of the Chojnacki Defendants in their Motion. [ECF No. 287] at 1. Neither Plaintiffs nor Chojnacki Defendants provide any explanation as to the discrepancy between the names of these entities.

3

National, 1st Midwest, BMO, Inc. are not identified as defendants from whom Plaintiffs are seeking production of documents because Plaintiff's Motion is directed to Individual Defendants Long, Brandonisio, and Murphy, Defendants First National, 1st Midwest, and BMO filed a motion to join and adopt Chojnacki Defendants' Response to the Motion. *See* Defendants First National Financial, Inc., BMO Property Management, Inc., 1st Midwest Financial, Inc.'s Motion to Join and Expressly Adopt Chojnacki Defendants' Response to Plaintiffs' Motion to Compel [ECF No. 292] ("First National, BMO, and 1st Midwest Motion"). The caption on this filing does not indicate that it is joined by Long, Brandonisio, and Murphy, but the signature block reflects that it was signed by their counsel on their behalf as well as on behalf of their entities. First National, BMO, and 1st Midwest assert, without further explanation, that Plaintiffs' arguments as to these entity Defendants "overlap, are identical, and intertwine with those against Chojnacki Defendants." *Id.*

Plaintiffs also have a separate request for production of Long's, Brandonisio's, and Murphy's emails which request appears to be separate from the request for tax returns for First National, BMO, and 1st Midwest that Plaintiffs are seeking from these Individual Defendants. To the extent, however, that First National, BMO, and 1st Midwest adopt and join Chojnacki Defendants' Response as to the general arguments regarding the relevance of tax returns, the Court considers those arguments in deciding whether to compel production of First National, BMO, and 1st Midwest's tax returns.

Finally, Plaintiffs seek to compel production of tax returns from 2020 through 2024 from Defendant Chase Real Estate LLC ("Chase Real Estate"). Motion [ECF No. 287] at 2, 5-6; Reply [ECF No. 294] at 10.

As should be abundantly clear from the foregoing, Plaintiffs' Motion and the briefs submitted by parties on all sides of the tax return dispute are not a model of clarity, to say the least. The Court, however, believes it understands the gist of the arguments being made, for the most part.

4

**Legal Standard**

"The purpose of discovery is to refine the case and to prepare it for trial based on a full understanding of the relevant facts." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015). Rule 26(b) governs the scope of discovery and provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.Proc. 26(b). "Under general discovery principles, the party seeking to compel discovery has the burden of showing relevance." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 978 (N.D. Ill. 2021). "This burden is not a high standard for at least two reasons. First, relevance is determined under the standard in Federal Rule of Civil Procedure 26(a)(1) and not the standard of Federal Rule of Evidence 401, which itself is not a high standard. Second, the principle that the party with access to the proofs generally bears the burden on an issue should temper, at least to some extent, the quantum necessary to meet the burden." *Id.* at 978-70 (internal citations omitted). If the relevance showing is made, "the burden then shifts to the objecting party to establish that the discovery request is irrelevant or otherwise improper." *RVassets Ltd. v. Marex Cap. Markets Inc.*, 2025 WL 1928056, at *2 (N.D. Ill. July 14, 2025) (quoting *Dobbey v. Taylor*, 2023 WL 2572432, at *7-8 (N.D. Ill. Mar. 20, 2023)).

Although the federal rules do not define relevance for discovery purposes, discovery is designed to help "define and clarify the issues," and as such, "relevance is to be construed broadly." *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) ("Because the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly ... 'If relevance is in doubt, courts should err on the side of permissive discovery.' ") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) and *Wiginlon v. CB Richard Ellis, Inc.*, 229 F.R.D. 568. 577 (N.D. Ill. 2004)). Other principles guiding the Court's determination of relevancy for discovery include that "trial 'courts have broad discretion to adjudicate discovery disputes and determine the underlying

5

relevancy'" and that "relevance is 'necessarily broader' under Rule 26(b)(1) than under Federal Rule of Evidence 401." *See Fed. Trade Comm'n v. Deere & Co.*, 2025 WL 1866817, at *1–2 (N.D. Ill. July 7, 2025) (internal citations omitted).

**Relevance and Proportionality of Plaintiffs' Request for Defendants' Tax Returns**

Plaintiffs contend the entity tax returns for the various Defendants identified in their Motion are relevant because "Plaintiffs have alleged that Defendants and their affiliates were associated in fact and constituted an 'enterprise'" for RICO purposes and " '[t]ax returns are relevant to allegations of financial impropriety and fraud' ." Motion [ECF No. 287] at 3 (citing and quoting *Elipas v. Jedynak*, 2008 U.S. Dist. LEXIS 122898, at *10-11 (N.D. Ill. Oct. 3, 2008) and *Burket v. Hyman Lippitt, P.C.*, 2007 U.S. Dist. LEXIS 54529)). Plaintiffs' also note their Amended Complaint alleges a RICO enterprise and "Defendants . . . constructed a complex network of entities designed to conceal ownership and conceal financial transfers between and among themselves" noting "[s]ubpoenaed bank records yield reference to hundreds of significant cash transfers between different cash entities with no apparent consideration." *Id.* at 7. Plaintiffs say generally the tax returns they are seeking are "relevant to discern how the Defendants reported the various financial transactions that are at the subject of these matters." *Id.* at 5. The tax returns presumably could help to shed light on these matters.

Plaintiffs argue Chase Real Estate's tax returns are relevant for an additional reason. Plaintiffs say the tax returns are relevant to Chase Real Estate's denial of liability "based on its assertion that it only had an independent contractor relationship with Defendant real estate agents Laurena Mikosz, Marcin Chojnacki, and Robert Rixer." Motion [ECF No. 287] at 5. Plaintiffs say Chase Real Estate's tax returns are relevant to determining employee versus independent contractor status, including "whether or not it is issuing 1099 tax forms versus W-2 forms" to these individual defendants, "whether it is reporting . . . various expenses of these individuals in a manner consistent with independent contractor versus employee,"

6

that "a review of K-1s, 1099s, and the existence of any inter-entity payments recorded on the Chase Real Estate LLC tax return are relevant as to Chase's claimed lack of involvement both in the transactions and in the Chase Roselle branch office," Chase Real Estate's "operational control" of these defendants and the Roselle office, and the reporting of sales commissions and expenses for the relevant transactions. *Id.* at 5-6.

In Reply, Plaintiffs provide the Declaration of David H. Benz, Managing Director for FGMK, LLC's tax practice. Mr. Benz is a tax attorney licensed in California, Nevada, and Indiana, and a member of the bar of the United States Tax Court. [ECF No. 294-1].[6] Mr. Benz says in his Declaration says that he "reviewed substantial documents in this matter, including depositions of the parties, bank records, and the pleadings" and that "[n]umerous transactions reflected in bank records and real estate conveyances show substantial transfers of assets between the Defendants, who are unrelated parties in this matter." *Id.* Mr. Benz says "[t]ax returns for the years 2020 through 2024 are necessary and imperative to my review of these cash and real estate transactions between the Defendants" and he provides additional reasons that he needs to see the tax returns including:

- "evaluate . . . consistencies between represented and actual business activity and in particular the reported bases of properties sold along with any Form 8825 (rental) activities";

- "trace the flow of income to reveal undisclosed ownership or nominee structures by revealing related-party transactions disguised as arms-length transactions as well as unreported income inconsistent with known transactions" including through "review of K-1s, 1099s, and inter-entity payment recorded on tax returns";

- "would assist in determining the true economic substance of the entities (including Chase Real Estate LLC) reported as parties to the various transactions" at issue;

---

[6] The Court previously denied Defendants' Joint Motion to Strike the Benz Declaration and arguments related to the Benz Declaration in Plaintiffs' Reply as untimely and instead granted Defendants leave to file a surreply. *See* Court's 8/22/2025 Order [ECF No. 303].

7

- "may establish intent and patterns of conduct" by showing "whether, on the various returns (including those of Chase Real Estate LLC), certain deductions taken for marketing, commissions, renovations, and related expenditures, which deductions were inconsistent with Defendants' claims";

- "are necessary to determine the veracity of defendants' representations to plaintiffs (and the public)" including that "Defendants Marcin Chojnacki, Robert Rixer, and Laurena Mikosz are independent contractors" by showing "whether this assertion is consistent with the manner in which Chase reports these individuals for tax purposes, including whether Chase deducts expenses related to them in a manner consistent with independent contractor status as opposed to employee classification";

- "will show how the various transfers of cash or real estate were reported between the unrelated parties" because "[s]ubstantial transfers of assets between unrelated parties for no consideration is relevant to evaluating both Plaintiffs' claims and Defendants' defenses in their fraud and civil RICO claims";

- "will also help establish and calculate damages for unjust enrichment and/or disgorgement"; and

- "will also enable the parties to determine . . . whether there are additional predicate acts under IRS Sec. 7201 or 7206(1)."

*Id.*

The Court first addresses the Motion as it relates to Chojnacki Defendants' tax returns. Chojnacki Defendants say they offered to produce their tax returns for 2020 through 2022 with unrelated transactions redacted. Chojnacki Defendants' Response [ECF No. 291] at 2. Chojnacki Defendants say 2020, 2021, and 2022 are the years when the transactions at issue are alleged to have taken place and "what Plaintiffs are demanding is not reasonably calculated to lead to admissible evidence" and "they have no justifiable reason for access to sensitive tax records that are wholly unrelated to this case." *Id.* at 2-5.

8

The Court, in its discretion, finds Plaintiffs adequately have shown that Chojnacki Defendants' unredacted tax returns from the years 2020 through 2024 are or may be relevant to the claims and defenses in this case. While Chojnacki Defendants cite authority that redactions of tax returns can be appropriate in some circumstances, those cases are inapposite, as they did not involve claims of extensive inter-entity transfers and alleged efforts to conceal transactions analogous to those asserted in this RICO conspiracy and fraud case. Chojnacki Defendants also do not explain why the "sensitive" nature of the tax records cannot be adequately addressed with the confidentiality restrictions already in place in this case. Chojnacki Defendants also assert that tax returns for one Defendant (the property management company, Mainstreet) only report rent on an aggregate basis and not a per-property basis and therefore those returns will not be relevant for RICO purposes. Chojnacki Response [ECF No. 291] at 4. Chojnacki Defendants' attorney's characterization of what Plaintiffs will see in Mainstreet's tax returns is insufficient to establish that no information in the tax returns is relevant. Plaintiffs have made a sufficient case that they are entitled to review the tax returns and make their own determinations of what they depict.

Chojnacki Defendants also say adequate information about the real estate transactions was already produced in "full financial ledgers, showing detailed transactions per property (rents received, payments made, etc." and that these documents provide "more detail than Plaintiffs could ever hope to glean from any tax records." *Id.* at 4-5. Again, the Court is unpersuaded by attorney argument that the tax returns will be redundant or cumulative in the face of Plaintiffs' tax consultant's proffer that the tax returns being sought will contain relevant information and are necessary for him to advise Plaintiffs and do his analysis. In the Court's view, Plaintiffs' tax consultant provides a plausible and credible basis for Plaintiffs' Motion. Moreover, even if Plaintiffs seek tax returns for a two-year period beyond when the transactions at issue occurred, the Court does not view this request as disproportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26 and

Chojnacki Defendants do not contend that responding to the request imposes any undue burden. Moreover, Chojnacki Defendants rely on an outdated legal standard for ascertaining the relevance of a discovery request. Under Federal Rule of Civil Procedure 26 as amended in 2015, Plaintiffs need not show that discovery is reasonably calculated to lead to admissible evidence, but instead "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.Proc. 26(b). Plaintiffs meet that standard here.

Chojnacki Defendants also argue tax returns are not relevant to Plaintiffs' RICO and fraud claims because those claims are not based on fraudulent tax returns or a tax related scheme. Chojnacki Defendants' Response [ECF No. 291] at 5 (arguing "[o]nly in such cases do courts find tax records freely discoverable."). Chojnacki Defendants' cited cases, however, all address pleading requirements and none of the cases stand for Chojnacki Defendants' broad proposition that tax records are only discoverable in RICO conspiracy (or fraud) cases where the claims are based on fraudulent tax returns. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 344 (7th Cir. 2019) (affirming in part district court's dismissal of RICO claim for failure to plead a pattern of racketeering); *DeGuelle v. Camilli*, 664 F.3d 192, 195 (7th Cir. 2011) (reversing district court's dismissal of RICO claims on grounds that appellees' retaliatory acts were unrelated to the alleged tax fraud scheme and finding the predicate acts of the alleged schemes were related); *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312, 314 (7th Cir. 1985) (reversing district court's dismissal of Illinois's RICO claims).

To the contrary, tax returns have been found to be relevant to questions about the financial interrelationships between various defendants at issue in cases, like this one, involving civil RICO conspiracy and fraud claims. *See, e.g., Ad Astra Recovery Servs., Inc. v. Heath*, 2019 WL 2448569, at *3 (D. Kan. June 12, 2019) ("financial records could . . . help establish the relationship among the defendants, making this information relevant to the 'enterprise' element of a RICO claim.") (also citing *Brown*

10

*v. Tax Ease Lien Servicing, LLC*, 2016 WL 10788070, at *10 (W.D. Ky. Oct. 11, 2016): "The discovery of tax returns, general ledgers and bank records has been repeatedly permitted in RICO actions to assess the financial relationship among the defendants, the structure of the enterprise, measure the scope and extent of defendant's fraud, prove motive, identity of other persons who may have participated in the alleged scheme and to establish damages."); *Burket v. Hyman Lippitt, P.C.*, 2007 WL 2214302, at *2 (E.D. Mich. July 27, 2007), *objections overruled sub nom. Burket v. Hyman Lippitt, P.C,* 2007 WL 3124637 (E.D. Mich. Oct. 23, 2007) (citing *Heathman v. United Stated District Court for the Central District of California*, 503 F.2d 1032, 1033 (9th Cir. 1974): "tax returns relevant to 'the nature of the interrelationship among the various defendants,' including individuals, corporations and other legal entities"); *Elipas v. Jedynak*, 2008 U.S. Dist. LEXIS 122898, at *10-11 (N.D. Ill. Oct. 3, 2008) (granting motion to compel defendants individual tax returns in case alleging defendants fraudulently induced plaintiffs to purchase membership interests and diverted funds for personal use; "Tax returns are [] relevant to allegations of financial impropriety and fraud." (citing *Burket*, 2007 WL 2214302, at * 4)).

In the Court's view, the Benz Declaration adequately supports Plaintiffs' arguments that tax returns from 2020 through 2024 are relevant to evaluating the claims and defenses in this case and proportional to the needs of the case. Chojnacki Defendants contend the Benz Declaration contains "vague references to 'substantial transfers of assets between unrelated parties'" and that the "the claim that they are "relevant to evaluating both Plaintiffs' claims and Defendants' defenses" is a bald legal conclusion, and so it should not be given any consideration." Chojnacki Surreply [ECF No. 315] at 4. Neither case cited by Chojnacki Defendants, however, supports the position that relevance for purposes of a discovery motion cannot be shown by a consultant's declaration, even where the declaration includes arguably "conclusory" statements. Chojnacki Defendants rely on dicta *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736–37 (N.D. Ill. 2014) for the general proposition that legal conclusions in a declaration should not be considered but ignore the court's conclusion

11

that even "vague statements" in a declaration "suffices for the present discovery motion." *Id.*[7] Here, Plaintiffs' tax consultant has adequately explained why he thinks Defendants' tax returns may contain information that would be relevant to the claims and defenses in this case and to his ultimate opinion. The information being sought appears to be proportional to the needs of the case. That is sufficient at this stage of the discovery process.

For all these reasons, the Court finds Plaintiffs have established the relevance and proportionality of their request for Chojnacki Defendants' unredacted tax returns from 2020 through 2024.

Defendants First National, BMO, 1st Midwest adopt the arguments made by Chojnacki Defendants that the Court has rejected. Therefore, the Court also finds Plaintiffs have established the relevance of these entity Defendants' tax returns. The Court further notes that Plaintiffs seek to compel Individual Defendants Long, Brandonisio, and Murphy to produce the tax returns for these three Defendant entities. Neither the Chojnacki Defendants' Response nor the "me-too" response filed on behalf of the three entities (by counsel who also represents the three Individual Defendants) advance any argument disputing that Individual Defendants Long, Brandonisio, and Murphy are in possession, custody or control of the tax returns for First National, BMO, 1st Midwest. Accordingly, the Court has no reason to question

---

[7] The issue in *Miller UK* was whether the work product privilege protected certain information from disclosure in discovery; the court concluded "Miller has made an adequate showing for purposes of the present motion that it had oral confidentiality agreements with the prospective funders named in Mr. Miller's Declaration" notwithstanding that such showing was made with vague or conclusory statements. *Id.* at 738. *Shields Enters., Inc. v. First Chicago Corp.*, 1988 WL 142200, at *4 (N.D. Ill. Dec. 28, 1988), also cited by Chojnacki Defendants, is similarly inapposite, as it addressed whether non-parties' conclusory assertions of the confidential nature of certain documents sought in discovery satisfied their burden under Federal Rule of Civil Procedure 26(c) for entry of a protective order, and did not address the burden for establishing relevance under Rule 26. Finally, in *Cnty. of Cook v. Bank of Am. Corp.*, 2019 WL 6309925, at *4 (N.D. Ill. Nov. 25, 2019), the court concluded that a party's conclusory statement about the relevance of information sought in discovery was not sufficient to meet the initial burden of establishing relevance under Rule 26, but the case did not involve an expert declaration like Plaintiffs' have presented here.

the underlying premise in Plaintiffs' Motion that the Individual Defendants can and should produce the tax returns for the three entities with which they are affiliated that may be in their possession, custody, or control.[8]

Much of the Court's analysis above similarly applies to Chase Real Estate's tax returns. Chase Real Estate contends that production of its tax returns would be redundant and cumulative of information contained in other discovery produced in this case. Chase Real Estate, LLC's Response in Opposition to Motion to Compel [ECF No. 289] ("Chase Response") at 3. The Court disagrees. While Chase Real Estate asserts that its independent contractor agreements with Individual Defendants Miskosz, Rixer, and Chojnacki should be sufficient to resolve their employment status, the existence of such agreements does not necessarily resolve or settle the matter of the relationship between these parties. *See C*hase Real Estate, LLC's Sur-Reply in Opposition to Plaintiffs' Motion to Compel [ECF No. 311] ("Chase Surreply") at 3. *See also* Reply [ECF No. 294] at 7-8. Plaintiffs are entitled to discovery of other evidence relevant to determining employment status and Mr. Benz, in his Declaration, explains such information could be found in Chase Real Estate's tax returns. Although Chase Real Estate says its tax records will not contain such information or other relevant information about inter-entity transfers, the Benz Declaration, at the discovery stage, sufficiently rebuts such attorney argument. Chase Response [ECF No. 289] at 6; Chase Surreply [ECF No. 311] at 2-3.

---

[8] Plaintiffs also seek to compel Individual Defendant Long to produce tax returns for Defendant TCF. The Motion acknowledges that TCF is represented by counsel for Chojnacki Defendants. Motion [ECF No. 287] at 2. Individual Defendant Long does not respond to this request that she produce TCF's tax returns. Chojnacki Defendants respond that Defendant TCF is represented by Chojnacki Defendants' counsel and Individual Defendant Long is represented by separate counsel. *See* Chojnacki Defendants' Response [ECF No. 291] at 2. That all may be true, but, as was the case with Chojnacki Defendants' response regarding Midwest Title (addressed below), Chojnacki Defendants do not address whether Individual Defendant Long has possession, custody or control of TCF's tax returns or whether Long can be compelled to produce those tax returns based on her relationship with that entity. Accordingly, the Court has no basis to dispute Plaintiffs' premise that these tax returns may be in Individual Defendant Long's possession, custody or control.

In short, Plaintiffs do not have to accept Chase Real Estate's characterization of its relationship with other defendants. As for Chase Real Estate's argument that statements made in the Benz Declaration are "vague," the Court rejects this for the same reasons explained above as to Chojnacki Defendants' similar argument criticizing the Benz Declaration. The information contained in the Benz Declaration is sufficient for Plaintiffs to meet their burden to establish the relevance of Chase Real Estate's tax returns. In the Court's view, common sense also counsels that Chase Real Estate's tax returns may contain information that is relevant to the claims and defenses in this case and proportional to the needs of the case. For all these reasons, Plaintiffs have met their burden as to Chase Real Estate's tax returns.

Finally, as to Midwest Title, there is no dispute that its tax returns are relevant and it already has produced two years of returns. The only dispute is whether Midwest Title should have to produce its returns for other years. Notwithstanding the Court's grant of leave for Defendants to "file any surreply they wish to file" in response to Plaintiffs' Reply [ECF No. 303], Midwest Title did not respond to Plaintiffs' explanation that they seek additional returns from 2021 and 2024 which is a time frame broader than what Midwest Title has produced to date. Nor does Midwest Title dispute that it and/or Individual Defendant Irwin (who joins the Midwest Title Response) have possession, custody, or control of Midwest Title's tax returns for the additional years 2021 and 2024.

Chojnacki Defendants point out that Midwest Title is not part of the Chojnacki Defendants' group and that Midwest Title is represented by different counsel than Chojnacki Defendants. *See* Chojnacki Defendants' Response [ECF No. 291] at 2. But Chojnacki Defendants' Response does not address whether Individual Defendant Marcin Chojnacki has possession, custody or control of Midwest Title's tax returns or whether Plaintiffs can compel those tax returns from Marcin Chojnacki if they are in his possession. Accordingly, while the Court does not know precisely which Defendant or Individual Defendant has possession, custody, or control of Midwest Title's tax returns for 2021 and 2024, none of these Defendants has given the Court any reason

14

to doubt that these tax returns are in the possession of at least one (and perhaps more than one) of Defendants Midwest Title, Irwin and/or Chojnacki. In addition, the fact that a Defendant has possession of Midwest Title's tax returns could have independent significance that could justify Plaintiffs in seeking production of those documents from more than one Defendant.

With respect to Plaintiffs' request, made for the first time in their Reply, to compel production of defendant XYZABC, Inc.'s tax returns for 2021 through 2024, Plaintiffs say this entity is the sole member of Defendant Midwest Title, an LLC, but Plaintiffs provide no support for this claim. *See* Reply [ECF No. 294] at 9. While Plaintiffs' assert XYZABC, Inc. is "owned by" Individual Defendants Irwin and Chojnacki and that XYZABC, Inc. is represented by counsel for Chojnacki Defendants, *see id.* at n.4, the docket for *Lanzetta v. 11902 Longwood LLC* [24-cv-11404] shows XYZABC, Inc. is named as a defendant in that case but does not show any appearance of counsel for XYZABC, Inc. On the other hand, although Chojnacki Defendants filed a surreply, they did not address Plaintiffs' contentions regarding XYZABC, Inc. *See* Chojnacki Defendants' Surreply [ECF No. 315]. Similarly, while Plaintiffs assert Individual Defendant Irwin is "a shareholder of XYZABC, Inc. who has access to the XYZABC, Inc. tax returns," albeit without support or legal authority, Reply [ECF No. 294] at 9 n.4, neither Midwest Title or Irwin filed a surreply addressing this request for XYZABC, Inc.'s tax returns. Given that Plaintiffs did not name XYZABC, Inc. as a defendant against which they were moving in their Motion, that XYZABC, Inc. did not respond to Plaintiffs' Motion, and that the Court is uncertain whether XYZABC, Inc. is even represented by counsel and if so, by which counsel, the Court denies without prejudice Plaintiffs' request for defendant XYZABC, Inc.'s tax returns raised for the first time in their Reply.

For all the above reasons, and other than as specifically addressed above, the Court finds the various requests for production of tax returns from the entity Defendants in Plaintiffs' Motion seek information that is relevant and proportional

15

to the needs of the case within the meaning of Federal Rule of Civil Procedure 26. Therefore, Defendants must produce those documents forthwith.

**Request for Production of Individual Defendants' Emails**

In a convoluted argument, Plaintiffs also seek to compel production of emails from three Individual Defendants: Long, Brandonisio, and Murphy. Motion [ECF No. 287] at 7-8. Plaintiffs say Kathleen Long is the President and sole shareholder of Defendants First National and TCF; Kendall Murphy is the President and shareholder of Defendant 1st Midwest; and David Brandonisio is the President and sole shareholder of Defendant BMO. *Id.* at 2. Plaintiffs argue they have gotten nowhere in their attempt to obtain emails from these Individual Defendants in part because Plaintiffs appear to assert counsel for Chojnacki and Rixer are somehow interfering with Plaintiffs' discovery efforts. For example, Plaintiffs say counsel for Chojnacki and Rixer are signing discovery responses for all the Defendant entities with which Long, Brandonisio, and Murphy are affiliated (TCF, First National, BMO, and 1st Midwest) and improperly limiting searches for emails of these three entities by only producing emails contained in Chojnacki's email account rather than also producing emails from the email accounts for Long, Murphy, and Brandonisio. *Id.* at 2, 7-8. Plaintiffs also say the situation is exacerbated because "Long, Murphy and Brandonisio are represented by different counsel than their respective entities" and "[t]he entities owned and controlled by Defendants Long, Murphy, and Brandonisio are represented by counsel for Rixer and Chojnacki" (the individual Chojnacki Defendants Marcin Chojnacki and Robert Rixer are represented by Robert T. Boylan, Eric J. Shukis and Daniel S. Tyler from Foran Glennon Palandech Ponzi & Rudloff PC). *Id.* at 2, 7. Therefore, Plaintiffs appear to say Chojnacki Defendants must produce the Long, Murphy and Brandonisio emails Plaintiffs are seeking in their Motion.

As an initial matter, and contrary to Plaintiffs' suggestion, it does not appear that Defendants First National, BMO, and 1st Midwest are represented by the same

16

counsel as Individual Defendants Chojnacki and Rixer. The filing by the three entity Defendants concerning the Motion identifies their counsel as Michael Sadic at Sadic & Sriratana LLC. *See* First National, BMO, and 1st Midwest Motion [ECF No. 292]. The filing also identifies Mr. Sadic as counsel for Individual Defendants Long, Murphy, and Brandonisio. *Id.* As far as the Court can tell, Mr. Sadic does not represent Chojnacki or Rixor. Nor does the CM/ECF docket reflect that counsel for Chojnacki and Rixer represent First National, BMO, and 1st Midwest. *See Weiner v. Chojnacki et al.* [Case No. 23-cv-16573]. As far as the Court can discern, only one of these Defendant entities, TCF, which is affiliated with Individual Defendant Long, is represented by Chojnacki Defendants' counsel, while Long, as noted above, is represented by Mr. Sadic. *See* Chojnacki Defendants' Response [ECF No. 291] at 2.[9]

With respect to the request for production of emails from Long, Murphy, and Brandonisio, Chojnacki Defendants say "[t]hose individuals' emails are not in [the Chojnacki Defendants] possession, custody, or control" and Plaintiffs should instead seek production of those emails from counsel representing Long, Murphy, and Brandonisio. Chojnacki Response [ECF No. 291] at 7. In their Reply, Plaintiffs say they did ask Individual Defendants Long, Murphy, and Brandonisio to produce their emails and they "have denied (*sic*) to produce their emails as their entities, Defendants 1st Midwest Financial, BMO Property Management, Inc., TCF National

---

[9] To the extent counsel for the Chojnacki Defendants is signing discovery responses on behalf of Defendants represented by other counsel in this case, that would appear to be improper. Plaintiffs do not provide the Court with those discovery responses, however, and Chojnacki Defendants do not address Plaintiffs' assertions about the signatories for the discovery responses for Defendants First National, BMO, and 1st Midwest. Chojnacki Defendants do argue Marcin Chojnacki is entitled to sign interrogatory responses on behalf of a different group of Defendant entities that are within the Chojnacki Defendants' group, including TCF. *See* Chojnacki Defendants' Response [ECF No. 291] at 5-6. Chojnacki Defendants also argue in their Surreply that while Long previously was the sole owner of TCF, "subsequently, the ownership structure was changed such that Long, Rixer, and Chojnacki each held a 33% ownership stake in TCF." Chojnacki Defendants' Surreply [ECF No. 315] at 3 n.1 (attaching two exhibits supporting this claim). In their Reply, Plaintiffs no longer appear to seek to compel any revised interrogatory responses signed by a new representative. Reply [ECF No. 294] at 6, 10. For all these reasons, the Court views the entire discussion of who is signing discovery responses as a non-sequitur.

Holdings, and First National Financial are represented by other counsel." Reply [ECF No. 294] at 6-7. Presumably this means the Individual Defendants are directing Plaintiffs to obtain their emails from their respective affiliated entities. But Plaintiffs' Motion is directed at the Individual Defendants and Plaintiffs clarify that they are also refusing to produce their emails. Reply [ECF No. 294] at 6-7.

Ultimately, the Court understands Plaintiffs' Motion seeking production of these emails to be directed to Individual Defendants Long, Brandonisio and Murphy. [ECF No. 287]. Notwithstanding this, neither Individual Defendants Long, Murphy, and Brandonisio nor their affiliated Defendant entities (First National, BMO, 1st Midwest) respond substantively to Plaintiffs' request, which the Court understands to seek an ESI search of these Individual Defendants' email accounts and production of the responsive emails uncovered by that search. Rather, the "me too" response filed by Defendants First National, BMO, and 1st Midwest merely adopts Chojnacki Defendants' Response, which, as discussed above, only states the Individual Defendants' emails are not in Chojnacki Defendants' possession (which the Court understands to also include any emails from Individual Defendant Long that are related to TCF). *See* First National, BMO, and 1st Midwest Motion [ECF No. 292]. By failing to respond, Individual Defendants Long, Brandonisio, and Murphy and Defendants First National, BMO, and 1st Midwest have waived their right to do so.

The Court can see how the emails related to Defendants TCF, First National, BMO, and 1st Midwest that Plaintiffs seek from the Individual Defendants' email accounts may be relevant and proportional to the needs of the case, particularly given the lack of any response from these Defendants to the Motion explaining why that is not so. Therefore, the Court grants Plaintiffs' Motion to compel production of these emails as to Individual Defendants Long, Brandonisio, and Murphy, but denies Plaintiffs' Motion to the extent it seeks to compel production of these emails from Chojnacki Defendants based on their representation that the emails are not in their possession, custody, or control.

For the above reasons, the Court grants Plaintiffs' Motion to Compel Defendant Midwest Title and Closing Services LLC, Individual Defendant Rachel Irwin and/or Individual Defendant Marcin Chojnacki to produce Midwest Title and Closing Services LLC tax returns from 2021 and 2024. The Court denies without prejudice Plaintiffs' Motion to Compel Defendant XYZABC, Inc.'s 2021 through 2024 tax returns.

The Court grants Plaintiffs' Motion to Compel Individual Defendant Kathleen Long to produce 2020 through 2024 tax returns for Defendants First National Financial, Inc. and TCF National Holdings, Inc.

The Court grants Plaintiffs' Motion to Compel Individual Defendant David Brandonisio to produce 2020 through 2024 tax returns for Defendant BMO Property Management, Inc.

The Court grants Plaintiffs' Motion to Compel Individual Defendant Kendall Murphy to produce 2020 through 2024 tax returns for Defendant 1st Midwest Financial, Inc.

The Court grants Plaintiffs' Motion to Compel Defendant Chase Real Estate LLC to produce its tax returns for 2020 through 2024.

The Court grants Plaintiffs' Motion to Compel the Chojnacki Defendants to produce unredacted tax returns from 2020 through 2024 for Defendant entities within the Chojnacki Defendants' group of Defendants. The Court will not, however, attempt to sort through the confused briefing described above to identify which Chojnacki Defendant entities (including, without limitation, TCF National Holdings, Inc.) must produce which tax returns. The parties know the facts better than the Court and they should understand what tax returns need to be produced by which Defendants consistent with this Order. If they do not, then they can seek clarification.

To the extent any entities were dissolved prior to 2024, the Court's Order should be construed to require production of the final tax returns for any such entit(ies).

Finally, the Court grants Plaintiffs' Motion to Compel production of emails responsive to ESI searches from Individual Defendants Kathleen Long, Kendall Murphy, and David Brandonisio. The Court denies Plaintiffs' Motion to Compel production of Individual Defendants Kathleen Long, Kendall Murphy, and David Brandonisio emails from the Chojnacki Defendants.

The emails shall be produced by October 11, 2025. The aforementioned tax returns shall be produced by October 8, 2025.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 30, 2025